Good morning, Your Honors. May it please the Court, my name is Howard Davis. I represent the petitioners Joseph and Asatui Babi in case 988 and Marie-Rose Babi in case 984. I'd like to reserve two minutes for rebuttal time. This case, this is a deportation case and it arises out of the Lebanon Civil War from 1975 to 1990 and the incidents that occurred to the lead petitioner Joseph Babi and his family. The agency denied asylum, withholding and CAT and the Court should remand because the IJ and the Board erred in finding no past persecution and as a result no well-founded fear of future persecution, etc. Am I correct that that's the only issue in this case, whether the harm experienced by the Babis rose to the level of past persecution? With regard to past persecution, yes. Now with regard to the issues before us today, is that not the only issue? Well, I mean, it's the basis for all the other things. Well, the other issues weren't decided by the BIA, were they? They stopped the past persecution because they didn't find any. Right, but they did go on to make a finding about a well-founded fear and... Which is different if there's a past persecution. Right, because then the... All we have to decide then is whether there's past persecution. Right, that is the main issue. Well, they did decide on the issue of whether or not there's a well-founded fear and the Board also decided on CAT. Okay. And do you maintain still that you have an issue under the CAT or are you no longer pressing that? You know, I don't like to give up issues, but it's... Well, you might not like to, but what about, have you done it and shouldn't we? But I do see, like, the main issue here is the past persecution. Yes, whether it rose to the level of past persecution. Well, there's also the question of whether all the incidents are persecution. There were four incidents, right? Yes. There were two beatings, or two stoppings and roughing up beatings, and then there were two bombings. Are the two bombings persecution? I mean, they were not targeted at these particular petitioners. Usually persecution involves, you know, they single you out and they say, hey, you know, we don't like your politics or you don't like, you know, whatever. But in this case, they just happened to be present when bombs went off. Although, Your Honor, the... Am I right about that? There's no claim that they were, the bombs were set targeting at your clients, right? But it... I'm just... Specific, right. Okay, just to answer that specific question. Not specifically at those clients. However, it was in the context of they were in a church, it was Easter week, and as Mr. Bobby testified, they were...  Yes, they were targeted because they were Christians. But that's being generally subject to being a member of a group that's subject to persecution, but you have to show sort of individual targeting. The idea was that they're out to get you, they tried to get you a couple of times, they're going to, you come back, you're going to have continued persecution because they're going to continue to be out to get you. I'm not aware of any case where past persecution, where there's been past persecution based on sort of a general attack. Your Honor, just on that point, but isn't really being singled out more an issue of well-founded fear than past persecution? I mean, they were in a place with other Christians at a church, it was clearly demarcated, and it was bombed with a purpose. Well, but it's not the case where there are other cases involving past persecution where they say, well, they went after this person individually, and you can sort of assume they're going to keep going after them because they know who they are. I'm just not aware of any case where a generalized attack, being present for a generalized attack qualifies as past persecution. I mean, there are different incidents, right? I mean, the two first incidents, they said, you know, they specifically stopped your client, Joseph, right? Yes, yes, and that was for a specific reason. And then they left and came back three times after those things, which the BIA considered pretty significant. Which, I'm sorry? BIA considered pretty significant. Well, but with regard to the departures, one of the things is that he was asked, I mean, he did say why he came back. He said that he came back because, well, a couple of things. One is that for the two times the United States and going to Italy, he said that he came back, first of all, he loved his country. He didn't, it's difficult to leave one's country. However, he didn't feel afraid coming back because at that time there was a ceasefire, so he felt safe enough to return. So those were the two. And so I know that the board and the judge mentioned Lujo. But, you know, again, the difference with Lujo, Lujo went back to Indonesia because she basically went back for a job. And even in the other one. I'm sorry, how is that different? How is different going back because you love your country different than going back for a job? Well, the thing is that he specifically also said that he was not afraid to go back. But there's another thing that I think was a little disturbing here is that the board and the immigration judge found that there was no past persecution taking a cumulative approach, the emotional trauma plus the physical violence. And then the board and the one of the ways that the board and the judge sought to undermine the claim of trauma was one of the things that Judge Kaczynski mentioned, which is leaving the country and coming back in. But then there was the whole thing with the expert witness. And before I just talk about that, the thing is, is that the judge found Marie and the Bobbies to be completely credible, taking a look at, you know, the testimony and the documentation. Well, that's what we're talking about, the incidents. If they weren't found credible, we wouldn't be talking about them. I'm assuming they happened. I mean, that doesn't help you any, because we're sort of assuming that these things happened. And also, but not only the things happened, but also the psychological reactions to them. Because after the first incident, Mr. Bobbie mentioned that he had a nervous breakdown, he couldn't do anything, his body was in pain for months, and the judge and the board had problems with him, the fact that he didn't go to a doctor. Do you want to save time for rebuttal? Yes, I do. You have two minutes left. Okay, thank you. May it please the Court, Robert Tennyson for the government. The principal issue in this case, as you've identified, is whether or not the harm experienced by the Bobbies rose to the level of past persecution. Now, the board did not suggest that the two bombings should not be considered as part of the harm, did it? The board noted the bombing, but because he wasn't physically harmed, they did not treat that as him being physically harmed. They did discuss the bombing, the impact of the bombing with regard to the emotional harm that he might have felt otherwise. But they didn't suggest that that was an improper consideration because it wasn't directed at him individually. Right. They did not consider, they did not address whether or not the bombing was, constituted a harm because he was not directly impacted, or he was not the direct target of the bombing. That is not a finding that they made. They didn't rule on that one way or the other, right? They didn't rule on that one way or the other. He did. They didn't rule on that one way or the other. They did not rule on that one way or the other. He was harmed and found at minimal because there was no physical impact. That is correct, Your Honor. They found no physical impact from that, whereas they found physical impact from the two prior incidents in 1980 and 1983. After the first one, he did not seek medical treatment. And after the second one, he did leave, and he left multiple occasions. He left once to the United States and again, I believe, to Italy and to Spain, following a trip to have psoriasis treated in France. Given that those prior incidents, because he returned, were not treated as having, being a substantial harm or a significant enough harm. Shouldn't these things all be considered cumulatively? Isn't it a matter of considering both the beatings that occurred in a relatively short period of time and then the bombings in terms of him having a well-founded fear? Yes, Your Honor. They should be treated cumulatively. Do you think that the Board did that? I believe that the Board did this here. They said so at the very beginning of their decision that they were considering it cumulatively. And then as they went through, say, it's sort of like an addition problem, right? As they went through and they saw the first two incidents, they said, well, superficially right. I mean, you've got the beating one and beating two. But however, the degree of harm that we count all this in the addition is lessened because in the first beating, he didn't go and seek medical treatment. And following the second beating, he left the country a few times. Well, didn't he engage in some self-medication? Isn't that part of what the record shows regarding the beatings? The record indicates that he did. That he took, I believe, was it Valium? And there was another medicine that he took. Ativan. Ativan. Okay. But that he took those self-medicate. And he also testified that he did not. Those are pain. Actually, Ativan is an anxiety drug. And Valium is for pain. So there was no medication of the injury. It was mediating the pain. Right. There is the indication that he did take the pain medication. But the question as to whether or not these are permanent injuries, one thing that would have been useful is to have found out whether or not he saw a doctor, what the specific results of the beating were, how he was particularly injured. None of that we have. We only have that he self-medicated. He may have over-medicated. He might have under-medicated. But we don't know. But he describes them as having created trauma for him. Correct? Yes, Your Honor. He does. And you find that credible? We found credible. We did find him credible. But at the same time, he did later leave the country and come back, belying his claim that this persecution was so severe that he needed to leave the country or that he felt obligated to have left. Well, he said he was obligated then, but then conditions changed for a while and there was a peace, and then the peace fell apart. I thought he left at least once for medical treatment. He did. He went to France. Not for fear. He went to get medical treatment. He did. After the second incident. He didn't even claim that he left out of fear. Right. When he went to France, he claimed that he went to seek medical treatment after attempting for a couple of years to get a psoriasis problem in his hand resolved. What about the weight that we should give to the diagnosis of PTSD and the expert witness testimony? Do you think that the board gave that adequate weight? If so, why did they come out the way they did? I believe the reason why they came out the way they did is that they thought the PTSD determination for Mr. Bobby was premised on his having experienced all of these incidents, the two beatings and the two bombings, and these cumulatively supported the determination of PTSD. What the psychologist didn't consider and what was found during testimony is that there was that interruption between the beatings and the bombing and that the psychologist either didn't know or had forgotten that those had occurred and did not consider those as part of making her diagnosis of PTSD. Didn't she say that in the end that would have been immaterial and she would have reached the same conclusion? I believe she said something to that effect, yes, Your Honor. But the immigration judge was within the scope of its judgment and its fact-finding determination to have said, to have made the determination that essentially she was rationalizing the result once her having forgotten or not known of this intercedent event of him leaving the country had become known. I guess I don't understand the relationship or the rationality of that argument. How is it that the fact that he left the country and came back would necessarily mean that he did not suffer from PTSD? I mean, if an expert performed tests and interviews and made that determination, what difference does it make if he left and came back? It would go to the underlying sense of how severe he thought the harms he had suffered were. And her evaluation objectively as to how severe he understood or he reacted to those harms. Because his reaction to the events is just as much a determination of the PTSD as the events themselves. And if his reactions to those events, that is after the first and second, are to go back into the area where the harm occurred, the immigration judge was, within her fact-finding authority, the immigration judge was reasonable in finding that the level of harm, the level of emotional harm and the PTSD diagnosis didn't rise, was not supported. So do we want to turn to Marie Bobby now? In this case, the board, again, they recognized that her claim to persecution was seen through the eyes, would be seen through the eyes of a five-year-old. And that her family's harm would also be analyzed. Now here in this particular instance, Ms. Bobby, the only harm to which she was exposed and her family was exposed during the time that she's been alive, were the bombings. And during those bombings, no member of her family was harmed. She did testify that it made her upset, that she could not listen to Arabic without getting upset and angry. But beyond her being shaken and having that response, there's no indication that she suffered any harm, or the board's determination that she suffered harm is not supported by substantial evidence. This case is not, for example, the same as Hernandez-Ortiz, where you had a father who was taken away from the family and subsequently a brother who was shot before the child petitioners had to leave. Similarly, let's see, starts with an M, can't remember a subsequent case, where you had an individual who was, the mother was pregnant with him and she had to flee the military in Guatemala in order to avoid harm. And then subsequently he was unable to address that. Those are all cases where they were specifically targeted, right? In those cases, there's... There is actually a case of general violence in bombing. And that is, I think it's CNEZERIC, and I can't pronounce it. It's a 2004 case that involves bombing and shelling. I can give you the site as well. It's 367 F3rd 1206. But the thing in that case, but the difference between that case and this case is that the individuals were fleeing the bombing, there was a threat of imminent harm, that despite the fact that there was bombing and shelling of their home, just generally, because of, I believe, their ethnicity. I'm sorry, they shelled their home. They shelled their home and they fled immediately from, it was an immediate situation, it was immediate harm. We don't have that here. If it's their home, they would have been targeted. Right, exactly. Whereas this is a case where they are part of a crowd. Right. Do you have any case involving that situation where something, where you're harmed as a result of an attack on a crowd becomes past persecution? Your Honor, I'm not aware of any case like that, of a just general attack on a crowd where someone's harmed. I mean, if you take cases like WACKERY, where you have mass riots and, you know, someone has to drive through the riots, someone comes through the riots. The fact that the person went through the riot and there was no particular attack on that individual, and was present at the riots, and there was no particular attack on that individual, has been found not to, substantial evidence has supported a determination of the agency that there was no past persecution. But, counsel, this bombing is an example of religious persecution, isn't it? It's not like civil unrest or a riot, is it? You're not making that argument, are you? That this is not, well, if it is persecution, it is on the ground, it would be on the grounds of religion, that this is sectarian violence that is ongoing. Thank you. Okay, thank you. If you wish, you had two minutes left. It's not mandatory. Let's see. With regard to, I just want to say something about Marie Rose, which I didn't get a chance to mention before, is that I know there was a mentioning of Hernandez Ortiz and Mendoza Pablo, but one of the things with Marie Rose is that she herself didn't testify too much. I mean, her testimony was pretty sparse. However, her father did, and they did obviously mention the two bombings, but there were other things that were in the record, not just in the testimony. Were there two incidents that happened to Joseph or Count, in her case? I mean, she wasn't alive at the time, right? She wasn't alive, I guess perhaps to the extent that at that time, but we don't know that, that she knew about them and it had an impact. It would almost be like a secondhand sort of thing, but she was not alive during that time. But one could count it to the extent that it had an impact on her father, and then it has an impact on the child, because of the close connection between a parent and a child. I'm not sure I understand. I mean, what does that mean? I mean, lots of experiences that parents have prior to the children being born that don't have an effect on the children. The record's not developed in that way, Your Honor. I mean, did she know about it when? Did she know about it? I mean, it had an effect on her now. Well, if the record isn't developed, I mean, it was her responsibility to develop the record, if there was a need to make a connection to show that. Okay. But the thing is that there were other places in the record that talked about the sufferings that Marie Rose had. For example, in the affidavit, Mr. Bobby mentioned that during these bombings at home, they had to be at shelters often. She would throw up, have diarrhea when the bombs started, saying to Daddy that she didn't want to die. Another time in a shelter that they were hiding in, she awoke and heard from the bombing and thought that her parents had died. These are sort of things that remain sketched and scorched in her mind. This was something that was mentioned in the evaluation. In terms of the permanent injuries, I don't think that permanent injuries is a requirement. But they have to be serious injuries. I mean, we've drawn a clear distinction between situations where people have been left up and cases where they've suffered serious injuries. And we've got lots of cases where people have gotten beatings and the like. I said that's not enough. It's got to be serious injury. But for Mr. Bobby, these were serious injuries. No broken bones, no shed blood, no visit to the hospital. The serious injuries claimed are emotional trauma. It's accumulation. Your time is up. Thank you both very much. We'll submit the case of the persecution of Christians in Syria, which I know bothers the administration.
judges: Reinhardt, Kozinski, Berg